Herbert C. McManus and Myrtle G. McManus v. Commissioner.
McManus v. Commissioner
Docket No. 951-70.
United States Tax Court
T.C. Memo 1972-200; 1972 Tax Ct. Memo LEXIS 58; 31 T.C.M. (CCH) 999; T.C.M. (RIA) 72200; September 14, 1972
John B. Fisher, 1113-1115 Virginia St., East., Charleston, W. Va., for the petitioners. Juandell D. Glass, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following Federal income tax deficiencies and additions to tax against the petitioners: Taxable
Additions
to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6654 [1]
1959
$ 9,238.68
$4,619.34
$ 17.37
1960
16,321.13
8,160.57
18.37
1961
15,062.46
7,531.23
27.16
1962
5,616.08
2,808.04
Respondent has conceded that the petitioner, Myrtle G. McManus, is not liable for the additions to tax under section 6653 (b) because of his failure to prove that a part of the underpayment of tax was due to her fraud. On February 23, 1972, respondent filed a motion for an order to show cause, pursuant to Rule 31(b)(5) *60 of the Court's Rules of Practice, why the facts and evidence recited in his proposed stipulation of facts attached to the motion should not be accepted as established for the purposes of this case. On February 24, 1972, the Court entered an Order to Show Cause which was served on petitioners' counsel. On March 6, 1972, petitioners' counsel filed a short, sketchy response to the Order to Show Cause. The Court regarded the response as inadequate and not in compliance with the provisions of Rule 31(b)(5). Consequently, the Court entered a further order on March 9, 1972, directing the parties to appear in Washington, D.C., on March 21, 1972, for a hearing on the Order to Show Cause. A hearing was held on March 21, 1972, at which respondent's proposed stipulation of facts and exhibits were considered. Arguments were heard with respect to all paragraphs of the proposed stipulation of facts and, subject to various changes indicated in the record, the facts and evidence contained therein were declared established for the purposes of the case. When the case was called for trial in Charleston, West Virginia, on April 4, 1972, petitioners' counsel expressed his objection to the proposed stipulation *61 of facts and exhibits, primarily on the grounds of relevance and materiality. The Court overuled the objection and stated that an order would be entered making the Order to Show Cause absolute. On April 10, 1972, the Court entered an order making the Order to Show Cause under Rule 31(b)(5) absolute, and further ordered that the facts and evidence contained in respondent's proposed stipulation of facts were accepted as established for the purposes of this case. 1001 The issues for decision are: (1) Whether the petitioners understated ordinary income from their partnership business and their taxable income on their joint Federal income tax returns for each of the years 1959 through 1962 in the amounts determined by respondent by the specific item method of proof; (2) whether petitioners had unreported interest income, unreported capital gains and unallowable business expenses in the year 1962; (3) whether any part of the underpayment of tax for each of the taxable years 1959 through 1962 was due to fraud with intent to evade tax; (4) whether assessment of any deficiencies determined by respondent for the years 1959 through 1962 is barred by the statute of limitations; (5) whether *62 the petitioner-wife is liable for the determined deficiencies in tax; and (6) whether this Court has jurisdiction over the additions to tax under section 6654 detemined by respondent for the years 1959 through 1961. Findings of Fact Herbert C. McManus and Myrtle G. McManus (herein called petitioners) are husband and wife whose legal residence was Charleston, West Virginia, when they filed their petition in this case. Petitioners filed their joint Federal income tax returns for each of the years 1959 through 1962 with the district director of internal revenue at Parkersburg, West Virginia. The statutory notice of deficiency was mailed to the petitioners on November 20, 1969. During the years 1959 through 1962 the petitioners operated the General Window Cleaning Company, Charleston, West Virginia, as partners. The General Window Cleaning Company engaged in the window cleaning business and related services in Virginia, South Carolina and the Charleston, West Virginia, area during the years in question. Partnership income tax returns (Forms 1065) were prepared and filed by Herbert C. McManus (herein called petitioner) on behalf of the General Window Cleaning Company for each *63 of the taxable years 1959, 1960, 1961 and 1962 with the district director of internal revenue, Parkersburg, West Virginia. Petitioner's formal education ended at the seventh grade. He had no training in bookkeeping. Petitioner personally supervised the business operations of the General Window Cleaning Company. The books and records of the business were maintained by or at the direction and under the supervision of petitioner during the years 1959 through 1962. The books and records were sketchy and inaccurate. They consisted mainly of an accounts receivable ledger, general expense accounts, miscellaneous payroll records and some checks and bank statements, all of which were voluntarily made available by petitioner to respondent's agents. Petitioner prepared and filed the joint Federal income tax returns for himself and his wife for each of the years 1959 through 1962. Customer accounts receivable ledgers showing billings (debits) to and payments (credits) by customers of General Window Cleaning Company were a part of the books and records maintained by petitioners. Herbert C. McManus personally computed gross receipts for the General Window Cleaning Company for each of the *64 years 1959 through 1962 by running an adding machine tape total of credits (payments) shown on the accounts receivable ledgers. General Window Cleaning Company did not have accounts receivable ledgers showing payments received from a substantial number of customers. Petitioners established a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by E.I. du Pont deNemours & Company from the accounts receivable ledgers, or they failed to prepare accounts receivable ledgers during each of the years 1959 through 1962, as follows: Recorded
Gross
Paid by
on A/R
Receipts
Year
duPont
Ledgers
Omitted
1959
$ 1,601.60
No Ledger
$ 1,601.60
1960
15,277,27
$ 1,118.00
14,159.27
1961
23,722.49
23,379.56
342.93
1962 18,451.54
12,720.06
5,731.48
Total $59,052.90
$37,217.62
$21,835.28 Petitioners established a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by OwensIllinois from the accounts receivable ledgers, or they failed to prepare accounts receivable ledgers during each of the *65 years 1959 through 1962 as follows: Paid by
Recorded
Gross
Owens-
on A/R
Receipts
Year
Illinois
Ledgers
Omitted
1959
$3,023.70
No Ledger
$3,023.70
1960
2,371.20
No Ledger
2,371.20
1961
2,099.90
$2,099.90
0
1962 1,651.00
No Ledger
1,651.00
Total $9,145.80
$2,099.90
$7,045.90 Petitioners established a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by Union Carbide Corporation from the accounts receivable ledgers, or they failed to prepare accounts receivable ledgers during each of the years 1959 through 1962, as follows: Paid by
Recorded
Gross
Union
on A/R
Receipts
Year
Carbide
Ledgers
Omitted
1959
$19,454.99
No Ledger
$19,454.99
1960
35,829.25
$12,788.32
23,040.93
1961
24,983.04
3,926.36
21,056.68
1962 27,023.29
26,450.21
573.08
Total $107,290.57
$43,164.89
$64,125.68 Petitioners establish a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by White Sulphur Springs Company from the accounts *66 receivable ledgers during each of the years 1959 through 1962 as follows: Paid by
Recorded
Gross
White
on A/R
Receipts
Year
Sulphur
Ledgers
Omitted
1959
$18,534.20
$18,534.20
$ 0
1960
19,059.93
18,473.40
586.53
1961
20,705.92
20,705.92
0
1962 25,090.82
18,379.61
6,711.21
Total $83,390.87
$76,093.13
$7,297.74 Petitioners established a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by Hewmont Construction Company by failing to prepare accounts receivable ledgers during each of the years 1961 through 1962, as follows: Recorded
Gross
Paid by
on A/R
Receipts
Year
Hewmont
Ledgers
Omitted
1961
$2,534.40
No Ledger
$2,534.40
1962 70.60
No Ledger
70.60
Total $2,605.00
$ 0
$2,605.00 In 1961, petitioners failed to record two items of gross receipts paid to General Window Cleaning Company by Associated Engineers in the amounts of $1,490 and $255. Petitioners established a pattern of consistently omitting gross receipts paid to General Window Cleaning Company by H. B. Agsten *67 & Sons, Inc., by failing to prepare accounts receivable ledgers during each of the years 1959 through 1962, as follows: Paid by
Recorded
Gross
Agsten
on A/R
Receipts
Year
& Sons
Ledgers
Omitted
1959
$ 143.00
No Ledger
$ 143.00
1960
584.00
No Ledger
584.00
1961
266.00
No Ledger
266.00
1962 555.45
No Ledger
555.45
Total $1,548.45
$ 0
$1,548.45 Petitioners established a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by Bell Lines, Inc., from the accounts receivable ledgers, or they failed to prepare accounts receivable ledgers during each of the years 1959 through 1962, as follows: Paid by
Recorded on
Gross Receipts
Year
BellLines
A/R Ledgers
Omitted
1959
$ 960.00
$1,040.00
$ (80.00)
1960
880.00
No Ledger
880.00
1961
960.00
No Ledger
960.00
1962 880.00
880.00
0
Total $3,680.00
$1,920.00
$1,760.00 Petitioners established a pattern of consistently omitting numerous and substantial items of gross receipts paid to General Window Cleaning Company by B.F. Goodrich Company *68 from the accounts receivable ledgers, or they failed to prepare accounts receivable ledgers during each of the years 1959 through 1962, as follows: Gross
Paid by
Recorded on
Receipts
Year
Goodrich
A/R Ledgers
Omitted
1959
$1,807.96
$ 459.00
$1,348.96
1960
853.96
853.96
0
1961
1,771.96
1,771.96
0
1962 881.96
No Ledger
881.96
Total $5,315.84
$3,084.92
$2,230.92 In 1959, petitioners omitted gross receipts in the amount of $1,467 paid to General Window Cleaning Company by Pure Oil Company by failing to prepare accounts receivable ledgers. Petitioners omitted numerous and substantial items of gross receipts paid to General Window Cleaning Company by Kroger Company from the accounts receivable ledgers, or they failed to prepare accounts receivable ledgers during each of the years 1959 through 1962, as follows: 1003 Gross
Paid by
Recorded on
Receipts
Year
Kroger
A/R Ledgers
Omitted
1959
$ 3,421.25
No Ledger
$3,421.25
1960
3,819.55
$2,094.85
1,724.70
1961
3,626.55
3,491.55
135.00
1962 3,603.55
3,583.55
20.00
Total $14,470.90
$9,169.95
$5,300.95
*69 The omitted gross receipts set out above, when added to reported gross receipts on the partnership returns, substantially equal gross receipts determined in respondent's statutory notice of deficiency, as follows: Gross Receipts
Year
Per Return
Omitted
Total
Per Stat. Notice
1959
$ 51,103.34
$ 30,380.50
$ 81,483.84
$ 84,199.44
1960
58,723.57
43,346.63
102,070.20
110,964.51
1961
65,404.04
27,040.01
92,444.05
113,819.63
1962 96,613.86
16,194.78
112,808.64
110,615.24
Total $271,844.81
$116,961.92
$388,806.73
$419,598.82
The difference between General Window Cleaning Company's reported gross receipts and gross receipts recorded on the accounts receivable ledgers for each of the years 1959 through 1962 is as follows: Gross Receipts
Year
Per Return
Per A/R
Difference
1959
$ 51,103.34
$ 43,460.32
$ 7,643.02
1960
58,723.57
60,119.90
(1,396.33)
1961
65,404.04
81,217.05
(15,813.01)
1962
96,613.86
86,597.75
10,016.11
Total
$271,844.81
$271,395.02
$ 449.79 The petitioner did not explain the various differences between gross receipts in the accounts *70 receivable ledgers and gross receipts in the partnership returns. The petitioners did not receive nontaxable income during the years 1959 through 1962. General Window Cleaning Company's deposited gross receipts exceeded gross receipts per accounts receivable ledgers for each of the years 1959 through 1962, as follows: Gross Receipts
Deposits
A/R
Exceeding
Year
Deposits
Ledgers
A/R Ledgers
1959
$ 67, 442.43
$ 43,460.32
$23,982.11
1960
84,264.80
60,119.90
24,144.90
1961
87,377.25
81,217.05
6,160.20
1962
91,389.70
86,597.75
4,791.95
Total
$330,474.18
$271,395.02
$59,079.16 General Window Cleaning Company's deposited gross receipts exceeded gross receipts reported on the partnership returns in all years except 1962, as follows: Gross Receipts
Deposits
Exceeding
Gross Receipts
Year
Deposited
Reported
Reported
1959
$ 67,442.43
$ 51,103.34
$16,339.09
1960
84,264.80
58,723.57
25,541.23
1961
87,377.25
65,404.04
21,973.21
1962 91,389.70
96,613.86
(5,224.16)
Total $330,474.18
$271,844.81
$58,629.37 Herbert C. McManus did not *71 explain the substantial differences between gross receipts reported on the partnership returns and gross receipts shown by the partnership accounts receivable ledgers and bank deposits for each of the years 1959 through 1962. Petitioners used regular employees as a nucleus of the work force, but additional temporary help was employed when needed. The allowable business expenses petitioners failed to claim on the 1959 through 1961 partnership returns exceeded the reported partnership ordinary income for each year as follows: 1959
1960
1961
Ordinary Income per Return
$4,778.20
$ 4,992.65
$7,002.68
Unclaimed Business Expenses 5,063.88
10,110.39
9,332.39
Excess ($ 285.68)
($ 5,117.74)
($2,329,71) 1004 The totals of petitioners' nondeductible personal expenses, expenditures for personal asset acquisitions, and reductions of personal liabilities during 1959 through 1962 are as follows: Nondeductible Personal Living Expenses, etc.
Item
1959
1960
1961
1962
Dixie Lee Shires
$ 2,975.00
$ 1,165.00
$ 470.00
0
Stock
1,250.00
$ 500.00
Lake Cabin
4,825.00
Personal Living Expenses
10,482.88
14,355.01
12,502.78
10,385.56
Savings Account
1,200.00
812.48
6,912.45
1959 DeSoto
1,500.00
1960 Corvette
1,618.10
1960 Thunderbird
2,500.00
Liability Reduction 1,930.44
2,410.50
4,156.06
2,443.72
Total $16,888.32
$28,073.61
$19,191.32
$20,241.73
*72 Petitioners failed to reveal their ownership or sale of Kanawha City Savings and Loan Company stock for $2,100 in 1962, and failed to report their realized gain of $1,135. Petitioners offered no evidence as to the disallowance of business expenses in 1962 in the amount of $1,468.59. Petitioners offered no evidence as to the determination of interest income of $58.69 in 1962 which was not reported on their Federal income tax return. Prior to filing General Window Cleaning Company's 1962 partnership tax return, the petitioner raised gross receipts about $10,000 above recorded gross receipts per accounts receivable ledgers, and still understated gross receipts by about $16,000. At the initial interview with respondent's agents on July 17, 1962, and at the interview on September 9, 1962, the petitioner concealed a bank account and a savings account he maintained at the First National Bank of Hinton. Petitioner stated to respondent's agents that his payroll records for 1959 through 1962 were complete, accurate and correct in every detail. Petitioner attempted to conceal from respondent's agents his stock holdings in Kanawha City Savings and Loan Company, Charleston Senators, *73 Inc., West Virginia Acceptance Company and Duplicating Creative Services, Inc.
Petitioner falsely stated to respondent's agents that he deposited all his business gross receipts in bank accounts. The accounts receivable ledgers of General Window Cleaning Company were the only records furnished to petitioners' accountant, William M. Ellis. Petitioners did not engage William M. Ellis or Edward McManus for the purpose of auditing records, verifying income or expenses, or verifying the correctness of respondent's determination of corrected taxable income. After telling respondent's agents and testifying in Court that checks drawn to cash and marked "payroll" or "PR" were for salaries, wages, or crew expenses, the petitioner admitted that he deposited many checks so marked in the bank account of Dixie Lee Shires, who was not an employee of the General Window Cleaning Company. The petitioner, Herbert C. McManus, was indicted for willful evasion of income taxes for the years 1960, 1961 and 1962 in violation of section 7201. On May 27, 1969, he entered a plea of nolo contendere to all three counts of the indictment in the United States District Court for the Southern District of West *74 Virginia. On June 3, 1969, he was fined a total of $8,000 and placed on probation for two years. Ultimate Findings 1. Petitioners have inadequate and incomplete books and records to show partnership gross receipts and ordinary income for the years 1959 through 1962. 2. Petitioners have failed to establish that they are entitled to business expenses in excess of those allowed by respondent. 3. Petitioners failed to show any error in the determination made by respondent of petitioners' taxable income for each of the years 1959 through 1962 by use of the specific item method of proof. 4. Petitioners understated their taxable income in each of the years 1959 through 1962, as follows: 1005 Year
Amount
1959
$28,049.22
1960
42,130.55
1961
39,083.20
1962
15,804.13
5. Petitioner, Herbert C. McManus, willfully and knowingly filed partnership income tax returns for each of the years 1959 through 1962 which he knew were false and fraudulent. 6. For each of the years 1959 through 1962 a part of the underpayment of tax by the petitioner, Herbert C. McManus, was due to fraud with intent to evade tax, and each of the Federal income tax returns for *75 those years was a false and fraudulent return with intent to evade tax. 7. Petitioner, Myrtle G. McManus, is liable for the deficiencies determined by respondent, even though she is not liable for the fraud penalty, because she has failed to establish her eligibility for relief under section 6013(e) of the Code. Opinion Issue 1. Determination of Taxable Income During the years 1959 through 1962 the petitioners operated a profitable window cleaning business as a wholly owned partnership. The business operations were supervised and directed by petitioner Herbert C. McManus. It was he who kept under his control and supervision the books and records of partnership income and expenses and who prepared the partnership and individual income tax returns of the petitioners. Respondent's examination of the partnership books and records revealed that many items of gross receipts were not recorded therein. In view of their gross inadequacy, respondent computed partnership ordinary income by using the specific item method of proof. Partnership customers were contacted and payments made to the partnership for services rendered were carefully documented. A comparison of the partnership *76 and customers' records revealed that gross receipts shown by customers' records were substantially in excess of gross receipts reported on the partnership records and returns for each year. The partnership records also revealed that the petitioners failed to claim certain amounts of allowable business expenses on the partnership returns for each of the years 1959 through 1961, all of which were allowed in respondent's computation of partnership ordinary income. It is well settled that taxpayers are required to report every item of gross income received and to maintain records to establish the correct amount of gross income, deductions and credits required to be shown on their tax returns. Marko Durovic, 54 T.C. 1364, 1391 (1970). In this case, where the petitioner has failed to keep the required records, and the books and records he kept were inadequate, the respondent was justified in determining petitioners' tax liabilities for the years 1959 through 1962 by the specific item method of proof. See Harold E. Harbin, 40 T.C. 373, 377 (1963). Respondent's determination of the deficiencies in tax is presumed to be correct in the absence of proof to the *77 contrary. Welch v. Helvering, 290 U.S. III (1933); Lawrence Sunbrock, 48 T.C. 55 (1967). Petitioners have introduced no evidence to show that respondent's determination of additional unreported gross receipts was erroneous, excessive, unreasonable or arbitrary. In fact, their accountants were not given access to all of the partnership records and they were neither asked to nor did they verify the correctness of respondent's determination of gross receipts and business expenses. Aside from the presumption of correctness, respondent has presented convincing evidence which establishes that substantial amounts of gross receipts were not recorded on the partnership records and were not reported on the partnership or individual income tax returns, but were knowingly diverted to petitioners' own personal use and benefit. Petitioners' attack is based upon vague and unsubstantiated allegations that they incurred additional business expenses above and beyond the additional amounts allowed by respondent. The only basis petitioners offer to support this allegation is that the net profit percentages shown by the partnership returns for subsequent years were lower and, therefore, *78 those lower percentages should be applied to the years in question. In essence, they are asking that business expenses be determined upon the basis of an indirect method of proof, using approximations rather than the specific expenses claimed on their partnership returns. This is plainly without merit. Although the petitioner Berbert C. MCManus swore under penalty of perjury that expenses claimed in the partnership returns were true, correct and complete, 1006 respondent found and allowed additional unclaimed business expenses shown on petitioners' books and records in amounts which exceeded reported partnership ordinary income in three out of four years. In addition, the petitioner told respondent's agents that the business expenses were correct and accurate in every detail. Other than the vague and unconvincing testimony of Herbert C. McManus, the petitioners have failed to introduce evidence to support their allegations. They did not testify to or offer any evidence of any specific business expenses incurred during those years which they had not been previously allowed. Cf. *79 Anson v. Commissioner, 328 F. 2d 703 (C.A. 10, 1964), affirming a Memorandum Opinion of this Court. Petitioners contend that respondent used the wrong method of proof in determining the understatements of taxable income. The assertion that respondent should have used the net worth method rather than the specific item method completely lacks merit, especially in light of the facts of this case. Petitioners are urging that an indirect method of proof be utilized in determining taxable income instead of a direct method of proof based upon the method of accounting they used. The net worth computation in evidence was prepared by Special Agent Stuckey to corroborate the specific item criminal income tax evasion case against the petitioner. It is admittedly incomplete for civil income tax purposes. The net worth method of proof was not used by respondent in either the criminal case or this case and, while it is an acceptable method of determining taxable income, it is less accurate than the specific item method used by respondent. See and compare *80 Emilie Furnish Funk, 29 T.C. 279 (1957), affirmed in part and remanded in part 262 F. 2d 727 (C.A. 9, 1958). It is significant that the petitioners have not directly attacked respondent's determination of taxable income under the specific item method of proof, nor have they offered an iota of evidence to show that the items of omitted gross receipts were erroneous. Not only have petitioners failed to prove error in the determined gross receipts, but they have also failed to prove that the partnership incurred deductible business expenses in excess of those allowed by respondent which were greatly in excess of the expenses claimed by petitioners on their partnership tax returns. Respondent submits, and we agree, that the taxable income of petitioners was clearly and accurately computed under the method of accounting utilized by them and that the method of proof used by respondent clearly and accurately shows such taxable income.This is simply a situation where respondent has corrected petitioners' reported income by adding to it gross receipts which Herbert C. McManus willfully and deliberately omitted from the partnership records. There can be no more definite *81 and accurate method of computing the partnership gross receipts in these circumstances. Consequently, we reject petitioners' contention that the net worth method of proof is the more accurate and the only feasible method avilable. On this record we hold that the petitioners have not proved error in the respondent's determination and, therefore, we sustain it. Issue 2. Unreported Interest Income and Capital Gain In his statutory notice of deficiency the respondent determined that the petitioners failed to report in the year 1962 interest income of $58.69, realized gain from the sale of stock in the amount of $1,135, and unallowable business expenses of $1,468.59. Petitioners offered no evidence on these adjustments. Therefore, we sustain respondent's determination. Issue 3. Additions to Tax under Section 6653(b) The parties are in agreement that unless fraud is found to exist the deficiencies herein are barred by the statute of limitations. Respondent must prove the requisite fraud by clear and convincing evidence to support the additions to tax under section 6653(b). See section 7454(a); *82 Arlette Coat Co., 14 T.C. 751 (1950); Luerana Pigman, 31 T.C. 356, 370 (1958); and Hicks Co., 56 T.C. 982, 1019 (1971), on appeal C.A. 1. We think he has successfully carried such burden of proof. The statute and the decided cases establish that if any part of the underpayment of tax is due to fraud the addition to tax attaches to the entire deficiency. Lawrence Sunbrock, supra at 65. The "fraud" mentioned in section 6653 (b) and its predecessor provisions is 1007 "actual, intentional wrongding, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner, 118 F. 2d 308, 310 (C.A. 5, 1941); Tomlinson v. Lefkowitz, 334 F. 2d 262, 265 (C.A. 5, 1964), certiorari denied 379 U.S. 962 (1965). It is now well settled that in a civil tax fraud case "consistent failure to report substantial amounts of income over a number of years, standing alone, is effective evidence of fraudulent intent." Schwarzkopf v. Commissioner, 246 F. 2d 731, 734 (C.A. 3, 1957), affirming a Memorandum Opinion of this Court; *83 Kurnick v. Commissioner, 232 F. 2d 678 (C.A. 6, 1956). If this flagrant, repetitive pattern of substantial omissions of income by a man of petitioner's perception and business acumen were the only factors involved, we would feel justified in finding a fraudulent intent in this case. But here other indicia of fraud are unmistakably clear: (1) inadequate and incomplete books and records; (2) false and misleading statements made to respondent's agents with intent to conceal bank accounts, payments to Dixie Lee Shires, stock ownership and the use of payroll checks for other expenses; (3) intentional understatements of allowable business expenses in a scheme to conceal unreported income by juggling figures so that the returns would not arouse suspicion on their face; (4) personal living expenses greatly in excess of the taxable income reported on petitioners' returns, Friedman v. Commissioner, 421 F. 2d 658 (C.A. 6, 1970); and (5) the prior conviction (on a plea of nolo contendere) of petitioner Hebert C. McManus for willful evasion of income taxes for the years 1960, 1961, and 1962. *84 Masters v. Commissioner, 243 F. 2d 335, 338 (C. A. 3, 1957). All in all, on the basis of this record and our evaluation of the credibility of the witnesses, there is clear and convincing evidence that petitioner Herbert C. McManus received substantial amounts of unreported income and deliberately failed to report the same in each of the years at issue. Thus we conclude that there was fraud proved for each of those years. Our ultimate findings of fact so reflect. See Friedman v. Commissioner, supra; Adler v. Commissioner, 422 F. 2d 63 (C.A. 6, 1970), affirming a Memorandum Opinion of this Court; Foster v. Commissioner, 391 F. 2d 727, 733 (C.A. 4, 1968), affirming on this issue a Memorandum Opinion of this Court; and Morris Lipsitz, 21 T.C. 917 (1954), affirmed 220 F. 2d 871 (C.A. 4, 1955). Issue4. Statute of Limitations Having decided that a part of the underpayment of tax in each of the years 1959 through 1962 was due to the fraud of Herbert C. McManus with intent to evade tax, it follows that the assessment of deficiencies against both petitioners for such years is not barred by the statute of limitations. *85 See section 6501(c)(1) of the Code. Fraud by the husband alone does not relieve the petitioner-wife of liability for the deficiencies or prevent the assessment thereof against her unless she qualifies as an "innocent spouse" under the provisions of section 6013(e). See Senate Rept. No. 1537, 91st Cong., 2d Sess. (1970), 1971-1 C.B. 606, 608; Ginsberg's Estate v. Commissioner, 271 F. 2d 511, 513-514 (C.A. 5, 1959); Kathleen C. Vannaman, 54 T.C. 1011, 1017-1018 (1970); and Tsuneo Otsuki, 53 T.C. 96, 112-113 (1969). Issue 5. Innocent Spouse Provisions of Section 6013(e)
We must consider the effect of the provisions relating to innocent spouses that were enacted on January 12, 1971. Pub. L. 91-679 (84 Stat. 2063, 1971-1 C.B. 547). Section 6013, relating to joint returns, was amended to add subsection (e), which provides in pertinent part: (e) Spouse Relieved of Liability in Certain Cases. - (1) In General. Under regulations prescribed by the Secretary or his delegate, if - (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly *86 includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking 1008 into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. Section 6653(b), relating to the addition to tax for fraud, was also amended to add the following new sentence: (b) Fraud. - * * * In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse. These amendments are applicable *87 to this case. See section 3, Pub. L. 91-679, supra. Absence of the spouse's fraud is conceded. Under section 6013(e) Myrtle G. McManus may be relieved of any liability for the deficiencies in tax, but to be entitled to such relief she has the burden of proving that (1) she did not know of or have reason to know of the omissions from income [subsection (e)(1)(B)] and (2) that she did not significantly benefit directly or indirectly from the items omitted from gross income [subsection (e)(1)(C)]. Jerome J. Sonnenborn, 57 T.C. 373 (1971); Nathaniel M. Stone, 56 T.C. 213 (1971). Except for two cursory references in the opening brief [2] of petitioners' counsel, there is nothing in this record to show whether the petitioner-wife had any knowledge of such omissions or significantly benefited therefrom. We simply have no evidence with respect to this vital information. The failure of Mrs. McManus to testify creates the normal inference that, if she had appeared and testified, such testimony would have been unfavorable. *88 Jerome J. Sonnenborn, supra at 383. Accordingly, we conclude that she has failed to prove that she is entitled to be relieved of liability for the deficiencies under the provisions of the statute. Issue6. Additions to Tax under Section 6654 In his statutory notice of deficiency the respondent determined that the petitioners were liable for additions to tax under section 6654 for the underpayment of estimated taxes for the years 1959, 1960 and 1961. Petitioners offered no evidence with respect to this determination. However, in view of the fact that the petitioners filed income tax returns for those years, this Court has no jurisdiction over the section 6654 additions to tax. See section 6659(b) (2) of the Code. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Petitioners filed no reply brief.↩