CHARLES E. ANDERSON and MARGELEE S. ANDERSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket No. 3401-76.
United States Tax Court
T.C. Memo 1978-387; 1978 Tax Ct. Memo LEXIS 125; 37 T.C.M. (CCH) 1579; T.C.M. (RIA) 78387; September 27, 1978, Filed *125 Charles E. Anderson, pro se. Juandell D. Glass, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax and additions to tax for the years and in the amounts as follows: Additions to Tax, I.R.C.0 1954 [1] Calendar
Sec.
Sec.
Sec. Year
Deficiency
6653(b)
6651(a)
6653(a)
1968
$ 14,032.33
$ 7,016.16
1969
7,453.14
6,236.05
($ 250.95)
1970
7,865.48
4,254.74
($ 161.00)
1971
7,257.50
3,628.75
The issues for decision are: (1) Whether respondent properly determined petitioners' tax liability for the calendar years 1968, 1969, and 1970 on a bank deposits method; (2) whether amounts received by petitioners by check and Federal reserve notes are income; (3) whether under the Constitution this Court has jurisdiction to redetermine the tax liability of an individual and whether petitioners have a constitutional right to a jury trial in this Court; and (4) is part of petitioners' underpayment in tax for *126 each of the years 1969, 1970 and 1971 due to fraud and is petitioner, Charles E. Anderson, estopped to deny fraud for the year 1968. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. [2]
*127 Petitioners, Charles E. Anderson and Margelee S. Anderson, who resided in Cameron, West Virginia, at the time of the filing of their petition in this case, filed joint Federal income tax returns with the District Director of Internal Revenue, Parkersburg, West Virginia, for each of the years 1968, 1969, 1970 and 1971. Petitioners were the owners and operators of funeral homes in Cameron, West Virginia, and Wind Ridge, Pennsylvania, during the years 1968 through 1971. During the years 1970 and 1971, petitioners also owned and operated a nursing home in Cameron, West Virginia. Charles E. Anderson (hereinafter petitioner) was solely responsible for the control and operation of the funeral homes and the nursing home during the years 1968 through 1971. Margelee S. Anderson was employed as a school teacher during all these years. Petitioners kept their books and records and filed Federal income tax returns for the years 1968 through 1971 on the cash basis method of accounting. Petitioner was born in Silver Hill, West Virginia, in 1928. He is a graduate of Cameron High School, Cameron, West Virginia. He graduated from the Pittsburgh School of Embalming in 1950, and from 1950 *128 to 1952 served in the Army Quartermaster Corps. He attended North Carolina State University during 1953 and 1954 and received a Bachelor of Science degree from West Virginia University in 1968. Petitioner personally maintained the funeral home income and expense records. He did not have a bookkeeper, but personally accumulated income and expense figures for each year here in issue for submission to the preparer of his Federal income tax return. Petitioner maintained a checking account at the First National Bank of Cameron, Cameron, West Virginia, in the name of Charles E. or Margelee Anderson, into which the income from the funeral homes was deposited. Petitioners also maintained a checking account at the First National Bank of Cameron, Cameron, West Virginia, in the name of Anderson Nursing Home. Petitioners deposited in their bank accounts at the First National Bank of Cmaeron, Cameron, West Virginia, the following total amounts for the years indicated: Year
Amount
1968
$ 76,036.80
1969
84,687.23
1970
76,399.90
On March 20, 1974, two of respondent's special agents met with petitioner at the Anderson Nursing Home, Cameron, West Virginia, and reviewed *129 with him from microfilm copies obtained from the First National Bank of Cameron, Cameron, West Virginia, the checks deposited into petitioner's checking accounts. Petitioner identified most of the checks as being income, loan repayments or checks cashed for friends. The following shows the total amount of non-income items deposited by petitioners in the bank accounts at the First National Bank of Cameron for the years indicated: Year
Amount
1968
$ 26,202.38
1969
42,253.04
1970
21,468.75
During the years 1968 and 1969, petitioners made cash loan payments to the First National Bank of Cameron in the amounts of $ 4,422.13 and $ 22,165.22, respectively. During the years 1968 and 1969, petitioners made cash payments to Cameron Hardware, Inc., Cameron, West Virginia, in the amounts of $ 5,417.64 and $ 5,638.49, respectively. On June 28, 1968, petitioner obtained a $ 4,000 loan from the First National Bank of Cameron, and purchased a bank money order payable to the Cameron Hardware, Inc. On March 4, 1969, petitioner obtained a $ 5,000 loan from the First National Bank of Cameron. Of the proceeds of this loan the amount of $ 1,755.38 was applied as a payment *130 on an outstanding loan of petitioner's at the First National Bank of Cameron, and the remainder of $ 3,244.62 was deposited directly to the checking account of the Cameron Hardware, Inc. During the taxable years 1968 and 1969, petitioners cashed checks for individuals in the amounts of $ 339.78 and $ 102.50, and deposited the checks in their account at the First National Bank of Cameron. On September 21, 1968, petitioner made a cash purchase of a personal money order from the First National Bank of Cameron payable to the First National Bank, Moundsville, West Virginia, in the amount of $ 3,590.12. The money order was used in payment of a real estate loan. On September 21, 1968, petitioner made a cash purchase of a personal money order from the First National Bank of Cameron payable to G. Charles Hughes, Attorney at Law, in the amount of $ 165. On September 21, 1968, petitioner made a cash purchase of a personal money order from the First National Bank of Cameron, Cameron, West Virginia, payable to J. Randall Crow, Clerk, in the amount of $ 3.25. On July 8, 1969, petitioner made a cash purchase of a personal money order from the First National Bank of Cameron, Cameron, West *131 Virginia, payable to G. Charles Hughes, Attorney at Law, in the amount of $ 40. On July 8, 1969, petitioner made a cash purchase of a personal money order from the First National Bank of Cameron, Cameron, West Virginia, payable to Bernard R. Simmons, Clerk, in the amount of $ 3.75. On November 7, 1968, petitioner purchased a personal money order from the First National Bank of Cameron payable to Dwight Burdette Gallentine in the amount of $ 4,310. This money order was used by petitioner to purchase 110 acres of land in Aleppo Township. In June 1969 petitioner purchased from the Estate of Paul Wright property located in Aleppo Township for the sum of $ 8,600. At that time, he delivered to the estate a check in the amount of $ 1,000 and on July 24, 1969, he delivered to the law office of James Hook, Fort Jackson Building, Waynesburg, Pennsylvania, cash in the amount of $ 7,600 in full payment of the purchase price of the land. Petitioners made total currency expenditures as follows for the years indicated: Year
Amount
1968
$ 22,557.92
1969
35,549.96
During the taxable year 1970, petitioners received income from funerals in the total amount of $ 25,035.56 *132 which was not shown as receipts on their records or reported as income on their 1970 Federal income tax return. During the taxable year 1970, petitioners withdrew cash out of their deposits in the total amount of $ 21,754.96. Petitioners received loans from the First National Bank of Cameron, in the following amounts in the years indicated: Year
Amount
1968
$ 21,850
1969
24,600
1970
5,000
During the taxable year 1968, petitioners received a Federal income tax refund in the amount of $ 336. During the taxable year 1969, petitioners received a Federal income tax refund in the amount of $ 471. During the taxable years 1968 and 1969, petitioners drew checks, payable to cash, from their checking account at the First National Bank of Cameron in the amounts of $ 656.79 and $ 6,420, respectively. During the taxable year 1968, petitioner Margelee S. Anderson received net take home pay in the amount of $ 3,019.81. In April 1969 petitioner received $ 5,200 from Allen Lee Simms in payment for 110 acres of land located in Aleppo Township, Pennsylvania, which was the land petitioner had purchased from Dwight B. Gallentine on November 7, 1968. During 1969, *133 petitioner received a loan in the amount of $ 2,600 from Willis B. Simms. During 1969, petitioners received $ 98.57 from the sale of livestock. During 1969, petitioners received $ 8.20 from State Farm Insurance Company in settlement of a claim. During 1969, petitioners received a reimbursement in the amount of $ 52.77 for real estate taxes. During 1969, petitioners received a check drawn on the Equitable Trust Company, Baltimore, Maryland, in the amount of $ 2,700, which was in payment for an airplane sold by petitioners to a Mr. Richard D. Dietz. During 1970, petitioner received a loan from Hobert Anderson, Sr. in the amount of $ 1,000. During 1970, petitioner received a loan from Robert Anderson in the amount of $ 150. During 1970, petitioners received proceeds from sale of livestock in the amount of $ 222.93. During 1970, petitioners received proceeds from State Farm Insurance Company in settlement of claims in the amount of $ 649.20. During 1971, petitioners' Federal income tax for the taxable year 1969 was examined by an Office Auditor of the Internal Revenue Service. On June 7, 1971, petitioners agreed to the office auditor's determination and executed a consent *134 agreeing to the office auditor's findings. The records submitted by petitioners to the office auditor disclosed that only a portion of the amounts received by petitioners from nine separate funerals was shown on their books as the receipts from these funerals. The records for the year 1969 submitted by petitioners to the office auditor also failed to disclose any receipts from 11 funerals for which petitioners received payment and failed to disclose receipts from ambulance fees. The total understatement of income on petitioners' books from these sources was $ 18,989.40, the amount of $ 6,348.68 being the understatement of total receipts from funerals showing on petitioners' records. On their records for the year 1971 petitioners did not list the receipt of income from 3 funerals from which they received income and did not record the full amount of income received from 27 funerals. The total unrecorded receipts from the 30 funerals were $ 15,375.93. On their Federal income tax return for 1971 petitioners claimed $ 3,344 as deductible expenses of the funeral homes which amount represented personal income taxes paid of $ 644 for 1970 and $ 2,700 additional 1969 personal income *135 tax paid as the result of the office audit examination for that year. Petitioners on their Federal income tax return for the year 1971 claimed deductible expenses of the funeral homes as insurance in the amount of $ 2,215.42 which amount represented personal insurance expenses. On December 22, 1971, petitioners sold 3 tracts of land situated in Aleppo Township, Green County, Pennsylvania, approximating 197 acres to Willis B. Simms for $ 7,500. The deed, although dated December 22, 1971, was not recorded in the courthouse at Waynesburg, Pennsylvania, until July 6, 1972. This property was purchased by petitioners on May 28, 1962, from A.F. and Ida Wise and others for $ 3,500. The amount of $ 8,511.05 of the $ 25,223 claimed on petitioners' Federal income tax return for the year 1970 as cost of labor, material and supplies of the Anderson Nursing Home is a duplication of the capital expenditure made and claimed by petitioners for cost of construction of the nursing home. Petitioner Charles E. Anderson was indicted for willfully attempting to evade and defeat income taxes for each of the years 1968 through 1971, and on March 4, 1975, he entered a plea of guilty to that charge *136 for the taxable year 1968 and the remaining 3 counts were dismissed. Petitioner was convicted for willfully attempting to evade tax for 1968 on the basis of his guilty plea by the United States District Court for the Northern District of West Virginia. During the taxable years 1968, 1969, 1970 and 1971, petitioners did not receive gifts or inheritances and had no loans other than those set forth above. When petitioner furnished the preparers of his Federal income tax returns with the figures of income and expenses he had accumulated from the funeral home records he kept and obtained from the nursing home records, he told the preparers of his 1969 and 1970 Federal income tax returns that he had presented to them all of his income information.
The books and records petitioners furnished to respondent's agents for the years 1969, 1970 and 1971 consisted of composition books which showed total income and expenses and funerals by names. Respondent's agent verified the amounts shown on the petitioners' 1970 books to the 1970 return and on the 1971 books to the 1971 return and found they agreed in amounts. During the course of the investigation of his income tax liability for *137 1968, 1969, 1970 and 1971, petitioner, Charles E. Anderson, stated to respondent's agent that all the currency withheld from deposits to his bank account and used for personal expenditures was properly recorded as receipts in his books although in fact this was not done. Respondent's agents discussed petitioners' omissions of funeral income during the taxable years 1969, 1970 and 1971 with petitioner, Charles E. Anderson, on three different occasions. Mr. Anderson first told respondent's agents that small amounts of income from "ship-ins" may have been omitted. He later stated that the omissions were of amounts never paid and finally stated that the omissions were because for state tax purposes only half of the receipts were required to be reported. None of these statements was in fact true. Respondent's agents recomputed petitioners' taxable income for each of the years 1968, 1969 and 1970 by the bank deposits plus cash expenditures method. Respondent's agents in the computation subtracted from total deposits all items which petitioner identified as non-income items and deducted amounts expended by petitioner for labor, material and other expenses. On the basis of this *138 computation, respondent in his notice of deficiency determined petitioners' income tax liability for the taxable years 1968, 1969 and 1970. Respondent in his notice of deficiency for the year 1971 determined that petitioner had understated funeral receipts by $ 15,375.93 and understated ambulance service income by $ 1,020.40, had failed to report capital gain of $ 2,000, and had overstated expenses by $ 8,425,42. OPINION The only argument that petitioner made with respect to any error in respondent's determination of deficiencies is that he received no funds other than by check and bank notes, and therefore received no reportable income, that this Court is not a proper forum in which to try his case, and that he should be entitled to a jury trial. Contentions similar to these have been made by numerous taxpayers and have been held to be without merit. See Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977); Hatfield v. Commissioner,68 T.C. 895 (1977); Gajewski v. Commissioner,67 T.C. 181 (1976); Burns, Stix Friedman and Co. v. Commissioner,57 T.C. 392 (1971). It *139 has long been settled that the burden is on a taxpayer to show error in respondent's determination of his taxable income whether that determination is made from the taxpayer's records or on a bank deposits method. When a taxpayer produces no evidence to show error in respondent's determination, that determination is presumed to 613-614 (1957). In numerous cases, a computation of a taxpayer's taxable income on the basis of bank deposits properly adjusted, comparable to the computation made by respondent in the instant case for the years 1968, 1979 and 1970, has been held to be proper where the taxpayer's books and records are unavailable, unreliable or inadequate. Harper v. Commissioner,54 T.C. 1121, 1129 (1970). In the instant case, the evidence produced at the trial shows that petitioners' books with respect to the funeral home operation were unreliable and supports respondent's computation in all respects. Respondent, on brief, conceded that he had not shown fraud with respect to Mrs. Anderson's tax liability for any of the years here in issue. Petitioner, Charles E. Anderson, is estopped to deny fraud for the year 1968 since he was convicted of income tax *140 evasion for that year in a criminal case upon his plea of guilty. Stone v. Commissioner,56 T.C.0 213, 221 (1971); Rodney v. Commissioner,53 T.C. 287, 305 (1969).
Respondent recognizes that he has the burden to show by clear and convincing evidence with respect to the years 1969, 1970 and 1971 that a part of the deficiency in petitioner's tax for each such year is due to fraud. In our view, the facts here clearly show fraud for each of these years. This case shows a consistent pattern of substantial understatements of income over a long period with no credible explanation for such understatements, an indication of fraud. Adlerv. Commissioner,422 F.2d 63, 66 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. This record also shows that petitioner kept fraudulent books, omitting income from certain funerals entirely and understating the income from others. In addition, this record shows that petitioner submitted inaccurate information to the preparers of his return, conducted a number of transactions with currency, and made false statements to respondent's agents during the course of their investigation. All of these actions *141 are further indications of fraud. Harper v. Commissioner, supra at 1142; Friedman v. Commissioner,421 F.2d 658 (6th Cir. 1970), affg. a Memorandum Opinion of this Court. Petitioner at the trial offered no explanation whatsoever for his gross understatements of income for each of the years here in issue, for his falsification of his books and records for these years, or for his false statements to the revenue agents during the course of their investigation of his tax returns. On the basis of this record, we conclude that respondent has shown by clear and convincing evidence that a part of the underpayment of tax by petitioner, Charles E. Anderson, for each of the years 1969, 1970 and 1971 was due to fraud with the intent to evade taxes. We sustain in full the deficiencies in tax for each year here in issue as to each petitioner and the addition to tax for fraud for each year here in issue as to petitioner, Charles E. Anderson. However, because respondent determined certain overpayments of additions to tax in his notice of deficiency and conceded that Mrs. Anderson was not liable for the additions to tax for fraud, Decision will be entered *142 under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. Respondent on April 6, 1977, filed a Motion for an Order to Show Cause Why Proposed Facts and Evidence Should not be Accepted as Established. To this motion he attached a proposed stipulation of facts. This Court on April 8, 1977, issued an order under Rule 91(f) of the Court's Rules of Practice and Procedure for petitioners to show cause why the facts and evidence recited in respondent's proposed stipulation of facts attached to his motion should not be accepted as established for the purpose of this case. Petitioners having made no response to the order to show cause, that order was on May 11, 1977, made absolute and the facts and evidence recited in respondent's proposed stipulation of facts were deemed to be established. When the case was called for trial, petitioner stated that some of the facts in the stipulation were inaccurate. Since petitioner was a pro se taxpayer, the Court read each fact in the stipulation which had been accepted as a fact and gave petitioner the opportunity to review each exhibit and permitted petitioner to state on the record any objection he had to the fact or if, in fact, there was any inaccuracy. With very minor exceptions, petitioner agreed on the record to all facts set forth in the stipulation except in many instances reserving an objection that amounts specified in dollars were amounts he received by checks or Federal reserve notes.↩